IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.: 19-cr-00086-REB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **BRAINARD CLARK**;
2. DAMIEN LEWIS; and,
3. DAVID WINSTON;

    Defendants.

## PLEA AGREEMENT

The United States of America, by and through Jason St. Julien, Assistant United States Attorney, and the defendant, Brainard Clark, personally and by counsel, Peter K. Hedeen, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

**A.    Defendant's Plea of Guilty**

The defendant agrees to: (1) plead guilty to Count 1 of the Superseding Indictment [ECF No. 44], charging a violation of 18 U.S.C. § 2118(d), conspiracy to commit pharmacy burglary; and, (2) waive certain appellate rights as described below.

**B.    Government's Obligations**

In exchange for the defendant's plea of guilty, the United States agrees to:

(1) recommend the Court give the defendant full credit for acceptance of responsibility per U.S. SENTENCING GUIDELINES MANUAL § 3E1.1, unless the defendant engages in

1

Court's Exhibit 1

conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, cmt. n.4, between the time of the guilty plea and sentencing; (2) dismiss Counts 2 through 5 of the Superseding Indictment [ECF No. 44] against the defendant at the Sentencing Hearing; and, (3) recommend a sentence at the low end of the guideline range as finally calculated by the Court.

### C. Defendant's Waiver of Appeal

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the Government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 15; or, (3) the Government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant

2

was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

*First*: The defendant and at least one other person agreed to violate 18 U.S.C. § 2118(b) (*pharmacy burglary*);

*Second*: The defendant knowingly and intentionally joined in the agreement; and,

*Third*: At least one co-conspirator committed an overt act in furtherance of the conspiracy.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 2118(d) is not more than 10 years imprisonment; not more than a $250,000 fine, or both; not more than 3 years supervised release; and a $100 special assessment fee.

If a term of probation or supervised release is imposed, any violation of the terms and/or conditions of supervision may result in an additional term of imprisonment.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below.

Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree the facts are as follows:

### Count 1

The defendant, Brainard Clark, knowingly and intentionally agreed and conspired with co-defendants Lewis and Winston, and others known and unknown, to burglarize pharmacies within the time-frame stated in the Superseding Indictment [ECF No. 44]. In furtherance of the conspiracy, Clark committed, *inter alia*, the following acts:

1. On or about July 28, 2017, Clark entered, without consent, Hometown Pharmacy & Medical located in Trinidad, Colorado for the purpose of stealing a controlled substance and dressed in a manner to hide his facial features to avoid law enforcement detection;

2. On or about October 15, 2017, Clark entered, without consent, Walgreens (located at 8705 Lexington Drive) in Colorado Springs, Colorado for the

purpose of stealing a controlled substance and dressed in a manner to hide his facial features to avoid law enforcement detection.

### Count 2

On July 28, 2017, at approximately 9:50 p.m., Clark and co-defendants Lewis and Winston, and others known and unknown, burglarized Hometown Pharmacy & Medical, located at 824 East Main Street in Trinidad, Colorado. In total, Clark and his co-defendants stole 7,430 pills of hydrocodone. The value of the stolen pills is approximately $148,600.

At approximately 9:50 p.m., co-defendant Lewis, dressed in black clothing (black sweater pulled up so you can see a white under-shirt) and red gloves uses a yellow crow bar and attempts to pry the front door open. One of the co-defendants then used a smaller black crow bar and helped Lewis pry the front door open. The defendants entered the pharmacy at approximately 9:51 p.m. They spent a total of 52 seconds in the pharmacy. Surveillance video shows Lewis leaving with the same yellow crow bar and one of the co-defendants leaving with a trash can filled with pills and bottles.

On August 11, 2017, federal Magistrate Judge Wang issued a 2703(d) Order regarding cellular information for Clark's cell phone. Federal Bureau of Investigation ("FBI") Task Force Officer ("TFO") Mace received and reviewed information gathered pursuant to the 2703(d) Order. That information revealed that Clark was at or near the pharmacy during the burglary.

At some point prior to the dates alleged in the Superseding Indictment [ECF No. 44], Clark was required to wear a global positioning system ("GPS") ankle monitor, overseen by Colorado Ankle Monitor, while on bond in a Colorado state court case. On

November 17, 2017, federal Magistrate Judge Gallagher signed a federal search warrant regarding location information for Clark's GPS ankle monitor. TFO Mace received and reviewed information from the ankle monitor search warrant. Information received revealed that Clark was at or near the pharmacy during the burglary. TFO Mace spoke with B.G. of Colorado Ankle Monitor, the company that oversaw Clark's ankle monitor. B.G. stated that Clark paid "a couple thousand dollars in cash" for the ankle monitoring service.

Hometown Pharmacy & Medical is registered with the Drug Enforcement Administration ("DEA") under 21 U.S.C. § 822 and was so at the time of the burglary.

Clark and his co-defendants, and others known and unknown, were neither authorized to enter and remain in Hometown Pharmacy & Medical after hours nor were they allowed to take any controlled substances from the premises.

### Count 3

On August 7, 2017, at approximately 12:58 a.m., Clark and co-defendants Lewis and Winston, and others known and unknown, burglarized Capital Heights Pharmacy, located at 1200 N. Madison Court in Denver, Colorado. In total, the Clark and his co-defendants stole approximately 7,798 pills. The value of the stolen pills is approximately $19,944.57. Of the 7,798 pills, 1,089 were oxycodone. The replacement cost of the oxycodone pills is $1,612.29.

TFO Mace reviewed information from Clark's ankle monitor and cell phone warrant. Information received from both warrants place Clark at or near the pharmacy at the time of the burglary.

Capital Heights Pharmacy is registered with the DEA under 21 U.S.C. § 822 and was so at the time of the burglary.

Clark and his co-defendants, and others known and unknown, were neither authorized to enter and remain in Capital Heights Pharmacy after hours nor were they allowed to take any controlled substances from the premises.

### *Count 4*

On August 22, 2017, at approximately 3:08 a.m., Clark and co-defendant Winston, and others known and unknown, burglarized The Medicine Shoppe Pharmacy, located at 2306 N. Wahsatch Street in Colorado Springs, Colorado. In total, Clark and others stole the following pills:

- 504 Oxycontin pills;
- 2569 Hydrocodone pills;
- 69 Percocet pills;
- 120 Morphine Sulphate pills;
- 440 Tramadol pills;
- 618 Hydromorphone pills;
- 340 Adderal pills;
- 145 Oxycodone pills;
- 676 Oxymorphone pills; and,
- 1277 Dextroamphetamine pills.

Oxycontin is a controlled substance. The replacement cost of the stolen oxycontin pills is $5,103. The value of all stolen pills is approximately $18,029. Clark and co-defendant Winston, and others known and unknown, also stole prescription medication. The total loss incurred by The Medicine Shoppe Pharmacy, including narcotic pills and other prescription medication is $27,298.

TFO Mace reviewed information from Clark's ankle monitor warrant. Information received from the warrant places Clark at or near the pharmacy at the time of the burglary.

The Medicine Shoppe Pharmacy is registered with the DEA under 21 U.S.C. § 822 and was so registered at the time of this burglary.

Clark and co-defendant Wilson, and others known and unknown, were neither authorized to enter and remain in the Medicine Shoppe Pharmacy after hours nor were they allowed to take any controlled substances from the premises.

### Count 5

On October 15, 2017, at approximately 12:44 a.m., Clark, along with others known and unknown individuals, burglarized Walgreens Pharmacy located at 8705 Lexington Drive in Colorado Springs, Colorado. Clark and others stole approximately 4,481 oxycodone pills. The replacement cost of the stolen pills is approximately $19,112.

TFO Mace reviewed information from Clark's ankle monitor search warrant. The information revealed that Clark was at or near the pharmacy during the burglary.

The Walgreens located at 8705 Lexington Drive in Colorado Springs is registered with the DEA under 21 U.S.C. § 822 and was so registered at the time of this burglary.

Clark and the other known and unknown individuals were neither authorized to enter and remain in the Walgreens after hours nor were they allowed to take controlled substances from the premises.

### VII. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States

Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. Although the Government is obligated to make the sentencing recommendation tied to an offense level of 15, as set forth in the Agreement section above, the parties understand that the Government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the Government may make legal or factual arguments that affect the estimate below.

A. Pursuant to § 2X1.1(a), the base guideline is § 2B2.1(a)(2) with a base offense level of **12** because: (1) § 2B2.1 is the guideline for the substantive offense; and, (2) the burglary was of a structure other than a residence.

B. Pursuant to the specific offense characteristic in § 2B2.1(b)(1), the base offense level is *increased by two levels* because the offense involved more than minimal planning. The resulting offense level is **14**.

C. Pursuant to the specific offense characteristic in § 2B2.1(b)(2)(D), the base offense level is *increased by three levels* because the loss is greater than $95,000 but less than $500,000, *i.e.*, $195,842.57. The resulting offense level is **17**.

D. Pursuant to the specific offense characteristic in § 2B2.1(b)(3), the base offense level is *increased by one level* because a controlled substance was taken, *i.e.*, hydrocodone, oxycodone, and oxycontin. The resulting offense level is **18**.

E. No other specific offense characteristics in §§ 2B2.1(b) or 2X1.1(b) apply.

F. There are no victim-related, role-in-offense, obstruction and/or multiple count adjustments.

G. The defendant should receive a **3-level** adjustment for acceptance of responsibility under § 3E1.1. The resulting offense level therefore would be **15**.

H. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on the information currently available to the parties, the Government estimates that the defendant's criminal history category would be **V**.

I. Assuming the criminal history facts known to the parties are correct, the armed career criminal statute does not apply.

J. <u>Imprisonment</u>: The advisory guideline range of imprisonment resulting from an offense level of **15** and the above criminal history category **V** is 37 – 46 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 18 months (bottom of Category I) to 51 months (top of Category VI).

In any event, the guideline range would not exceed the statutory maximum applicable to the count of conviction.

K.  Fine: Pursuant to guideline § 5E1.2, assuming the estimated offense level of **15**, the fine range for this offense would be $7,500 to $75,000 plus applicable interest and penalties.

L.  Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term shall be at least one year but not more than three years.

M.  The defendant agrees that he is jointly and severally liable, with the co-defendants for loss and damage, as finally calculated by the Court, to: (1) Hometown Pharmacy & Medical as a result of the July 28, 2017 burglary; (2) Capitol Heights as a result of the August 7, 2017 burglary; and, (3) The Medicine Shoppe Pharmacy as a result of the August 22, 2017 burglary. The defendant agrees that he is solely liable for the loss and damage, as finally calculated by the Court, to Walgreens (located at 8705 Lexington Drive in Colorado Springs) for the October 15, 2017 burglary. The parties are in the process of determining the final restitution amount.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or

to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

This document, as supplemented, states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the Government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 9.20.21

Brainard Clark
Defendant

Date: 9.20.21

Peter K. Hedeen
Attorney for Defendant

12

Date: 9/21/21

~~Jason St. Julien~~ Kelly Churnet
Attorney for the United States