**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 19-CR-00086-REB-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**BRAINARD CLARK,**

    Defendant.

---

**DEFENDANT BRAINARD CLARK'S SENTENCING MEMORANDUM AND MOTION FOR VARIANT SENTENCE OR FOR CONCURRENT TIME PURSUANT TO 18 U.S.C. § 3553(a)**

---

    Defendant Brainard Clark, by and through counsel, Peter Hedeen, and pursuant to 18 U.S.C. §3553, respectfully submits this Motion for Variant Sentence or for Concurrent Time for the court's consideration ahead of sentencing on January 6, 2022.

    **I.    Introduction**

    On November 21, 2019, Mr. Clark was charged in a Superseding Indictment with Conspiracy to Commit Pharmacy Burglary (Count 1) and Pharmacy Burglary and Aiding and Abetting (Counts 2-5).[1] (ECF Doc. 44). He was charged along with co-defendants Damien Lewis (19-cr-00086-1)[2] and David Winston (19-cr-00086-3)[3]. The charges

---

[1] The original Indictment was filed on February 21, 2019, which charged only co-defendant Damien Lewis. (ECF Doc. 1).

[2] On April 21, 2021, Mr. Lewis entered a plea of guilty to Count 2. (ECF Doc. 164). He was sentenced on August 12, 2021, to 50 months imprisonment, with 25 of those months to run concurrent to his sentences in El Paso County Cases 15CR414, 16CR6218, 17CR6154, and 18CR254. (ECF Doc. 186).

[3] On July 22, 2020, Mr. Winston entered a plea of guilty to Count 2. (ECF Doc. 123). He was sentenced on October 29, 2020, to 41 months imprisonment with three years supervised release. (ECF. Doc. 141).

stemmed from an investigation by law enforcement into 13 pharmacy robberies that occurred in Southern Colorado beginning in 2017. (ECF Doc. 193 at 8).

On September 21, 2021, Mr. Clark pled guilty to Count 1. (ECF Doc. 190). The charges stemmed from two burglaries that occurred on July 28 and October 15, 2017. As part of the plea agreement, the government agreed to give the defendant full credit for acceptance of responsibility, dismiss Counts 2-5, and recommend a sentence at the low end of the guideline range. (ECF Doc. 190 at pp. 1-2). A Presentence Investigation Report (PSR) was completed, which determined Mr. Clark's Total Offense Level to be 15 with a criminal history category of V. (ECF Doc. 193 at 21). Accordingly, the guideline range for imprisonment was determined to be from 37 to 46 months. (ECF Doc. 193 at 21). The probation office recommended a sentence of 37 months consecutive to Mr. Clark's state sentences. (ECF Doc. 193-1 at 2).[4]

As detailed in the PSR, Mr. Clark is serving state DOC sentences in cases 15CR132, 15CR2618, 18CR6823, 18CR6804, and 18CR7431, which were committed and filed prior to the filing of the Superseding Indictment in this federal case. (ECF Doc. 193 at 11-15). At the time of plea and sentencing in each state case, Mr. Clark's attorney was unaware of the existence of the federal warrant or the Superseding Indictment despite Mr. Clark's insistence to the contrary, and his attorney did not incorporate the existence of the federal case into negotiations in the state cases.[5] This

---

[4] The PSR reflects 0 days of presentence confinement credit (ECF Doc. 193 at 2) even though Mr. Clark has been in federal custody since January 23, 2020. Since Mr. Clark is on a writ from the CDOC, per BOP rules none of the time spent in-custody to date is applied to Mr. Clark's federal sentence unless this sentence runs concurrent to the state cases.

[5] This oversight by Mr. Clark's state attorney was significant, as illustrated by the result in co-defendant Damien Lewis's state and federal cases, explained herein. Mr. Clark has no recourse for the failure by his state attorney and cannot go back to state court to request concurrent time. The only way to achieve a result that is equitable in light of the sentences served by co-defendant Damien Lewis is to sentence Mr. Clark to concurrent time or a variant sentence in this case.

is in stark contrast to the efforts by Damien Lewis's attorney in state court, as explained below. In 15CR132, Mr. Clark pled guilty to Conspiracy to Commit Second Degree Burglary for an offense dated August 28, 2014, for which he was sentenced on January 7, 2019, to three years DOC concurrent to 15CR2618. (ECF Doc. 193 at 12-13). In 15CR2618, Mr. Clark pled guilty to Robbery[6] for an offense dated April 30, 2015, for which he was sentenced on January 7, 2019, to eight years in DOC concurrent to 15CR132. (ECF Doc. 193 at 13). In 18CR6804, Mr. Clark pled guilty to Possession of Marijuana Concentrate with Intent 2.5-5lbs for an offense dated September 10, 2018, for which he was sentenced on December 12, 2019, to five years in DOC concurrent to 15CR132 and 15CR2618 and consecutive to 18CR6823 and 18CR7431. (ECF Doc. 193 at 14). In 18CR6823, Mr. Clark pled guilty to Conspiracy to Commit Robbery for an offense dated September 10, 2018, for which he was sentenced on December 12, 2019, to four years in DOC concurrent to 15CR132 and 15CR2618 and consecutive to 18CR6804 and 18CR7431. (ECF Doc. 193 at 15). In 18CR7431, Mr. Clark pled guilty to Possession with Intent to Distribute Controlled Substance (Sch I-II) for an offense dated between November 14 and December 5, 2018, for which he was sentenced to four years DOC concurrent to 15CR132 and 15CR2618 and consecutive to 18CR6823 and 18CR76804. (ECF Doc. 193 at 16). A large part of the contraband recovered in 18CR7431 were obtained during the Burglary offenses charged in this case. Combined, Mr. Clark's DOC parole eligibility date is August 23, 2023, with a mandatory release date on March 10, 2031. (ECF Doc. 12-16).[7]

---

[6] The PSR lists the charge of conviction as Felony Menacing; court records show the charge of Felony Menacing was dismissed when the defendant pled guilty to Robbery, a class four felony.

[7] *See also* DOC Inmate Locator: http://www.doc.state.co.us/oss/ (last checked December 16, 2021).

Notably, Mr. Clark's co-defendant Damien Lewis also faced four separate felony state cases in El Paso County that predated the federal Indictment in this case. (ECF Doc. 178 at 2).[8] Those cases resulted in state prison sentences of 12, 22.5, 22.5 and 4 years, all served concurrently in DOC. (ECF Doc. 178 at 3). Unlike Mr. Clark's counsel in state court, Mr. Lewis's attorney in state court was aware of the federal Indictment and crafted a global plea agreement for Mr. Lewis that contemplated the state sentences would run concurrent to whatever future sentence would be imposed in the federal case. (ECF Doc. 178 at 3). Ultimately, Mr. Lewis was sentenced in this case to 50 months imprisonment with 25 months to be served concurrent to his state DOC sentences.

For the reasons set forth below, Mr. Clark respectfully urges the Court to impose either a variant sentence of 17 months consecutive to his Colorado Department of Corrections (DOC) Sentences in 15CR132, 15CR2618, 18CR6823, 18CR6804, and 18CR7431, or a sentence of 37 months with 20 months concurrent to his DOC sentences. Either way, Mr. Clark would serve a total of 17 months imprisonment in addition to the sentences in state court. He submits that such a sentence is sufficient, but not greater than necessary to comply with the purposes of punishment set forth in 18 U.S.C. § 3553(a), particularly in light of the sentence imposed in Mr. Lewis's case.

## II.     The Applicable Sentencing Standard

Following *United States v. Booker,* 125 S.Ct. 738 (2005), a sentencing court must impose a sentence in accordance with 18 U.S.C. § 3553(a) and should no longer

---

[8] Per Colorado State Court Data Access, Mr. Lewis was convicted in four state cases as follows: 15CR414 (Robbery, F4), 16CR6218 (Aggravated Robbery, F3), 17CR6154 (Second Degree Burglary – Theft of Drugs, F3), and 18CR254 (Second Degree Assault on a Peace Officer).

presume a sentence calculated pursuant to the Sentencing Guidelines is appropriate. In the post-*Booker* world, the correctly calculated Guidelines range is but one factor for the Court to consider in imposing a sentence. Most significantly, the Court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment set forth in 18 U.S.C. 3553(a)(2). *See United States v. Foreman,* 436 F.3d 638, 644 n. 1 (6th Cir. 2006) ("the district court's job is not to impose a 'reasonable' sentence [but] to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)"); *United States v. Tucker,* 473 F.3d 556, 561 (4th Cir. 2007) (same); *United States v. Willis,* 479 F.Supp.2d 927, 929 (E.D. Wis. 2007) (explaining that "the so-called parsimony provision…directs the court to impose the minimum term necessary to comply with the statutory goals of sentencing"). Those purposes include the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant." Title 18 U.S.C. 3553(a)(2)(A), (B) and (C).

To the extent that Defendant is effectively arguing for a variant sentence, such an argument allows a sentencing court not only to consider the so-called Section 3553(a) factors, but also factors that may be disfavored by the Sentencing Guidelines, like age and criminal record. *United States v. Huckins,* 529 F.3d 1312, 1318-19 (10th Cir. 2008) (citing *United States v. Munoz-Nava*, 524 F.3d 1137, 1148 & n. 6 (10th Cir. 2008); *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 602 (2007), and *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 575 (2007)).

In addition to the presumptive Guidelines range, sentencing courts must also consider, pursuant to 18 U.S.C. § 3553(a), a number of other factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; and the Guidelines. *Id.* at 3553(a)(1), (3) and (4).  Under this sentencing regime, a court should consider all the relevant sentencing factors, giving no more weight to one factor than to any other factor.  The focus of the post-*Booker* sentencing scheme, therefore, is a sentence based on the whole person before the court, rather than upon a mechanistic application of oftentimes two-dimensional and limited sentencing factors as embodied and codified in the Guidelines.

United States Sentencing Guidelines (USSG) Section 5G1.3(d) authorizes the court to impose a sentence to run concurrently, partially concurrently, or consecutively to the prior undischarged portion of the sentences imposed in Mr. Clark's unrelated and related state cases to achieve a reasonable punishment for the instant offense. *See* 18 U.S.C. § 3584(a); *United States v. Wiliams*, 46 F.3d 57 (10th Cir. 1995) (a court sentencing a defendant who is already subject to an undischarged term of imprisonment may run the terms concurrently or consecutively). Factors to be considered are those set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3584(b). Greater detail in making a determination regarding a concurrent sentence is contained in the U.S.S.G § 5G1.3 <u>Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment</u>. Section (d) (Policy Statement) reinforces the authority of the court to impose a sentence that runs concurrently, partially concurrently or consecutively to an undischarged term of imprisonment.

6

The application of Section (d) is further discussed in the Commentary and suggests the court consider:

(i) The factors set forth in 18 U.S.C. §3584 (referencing 18 U.S.C.§3553 (a);

(ii) The type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;

(iii) The time served on the undischarged sentence and the time likely to be served before release;

(iv) The fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court, and;

(v) Any other circumstances relevant to the determination of an appropriate sentence for the instant offense.

USSG §5G1.3 cmt. N.4(A).

Understanding that cases are often unique and particularly complex, the guidelines encourage the court to exercise its discretion to fashion a sentence of appropriate length and structured in an appropriate manner. USSG §5G1.3 cmt.N.4(D). As set forth below, Mr. Clark respectfully submits that full consideration of all the factors outlined in USSG §5G1.3 cmt. N.4(A), including the fundamental precept that the sentence be sufficient but not greater than necessary to serve the purpose of punishment, warrant a concurrent sentence. This is particularly in light of the sentence ordered in the case of co-defendant Damien Lewis.

**III.    Discussion**

USSG 5G1.3 (d) considerations support a concurrent sentence. Mr. Clark has spent the past 1,126 consecutive days in-custody.[9] He will remain imprisoned on his state DOC sentences through at least his next parole eligibility date of August 23, 2023 and would serve additional time under either structure suggested by him in this Motion. If this court fashions a sentence that includes an additional 17 months imprisonment beyond what Mr. Clark currently faces, either through a variance or concurrent time, he may ultimately serve day-to-day time of approximately six and one-half years in custody on the low end of the spectrum.[10]  Mr. Clark submits that more than six years in custody, on the low end, is a substantial sentence for the crimes he committed as charged in state and federal court. It is worth noting that contrary to Mr. Clark, co-defendant Damien Lewis's state offenses involved serious acts of violence, and Mr. Lewis's criminal history score was greater at a category VI. (ECF Doc. 182 at 2). Nonetheless, he was sentenced to 50 months with 25 months concurrent to his state cases. In light of that, and considering the other factors outlined in this Motion, a sentence of 37 months with 20 months concurrent seems just and appropriate.

    a. History and Characteristics

The PSR provides relevant details concerning Mr. Clark's upbringing and the unfortunate circumstances he was exposed to during his youth. (ECF Doc. 193 at 17-20). Additionally, in preparation for sentencing undersigned Counsel spoke to Mr. Clark's mother Euletha "Shay" Scott, who emphasized her love and support for her son whom she described as "just plain good – a good son, a good father, a good brother."

---

[9] Mr. Clark has been imprisoned consistently in state custody since November 26, 2018. (ECF Doc. 193 at 12-13).
[10] An additional 20 months imprisonment beyond August 23, 2023 is April 23, 2025. There are 2,340 days (or approximately 6.5 years) between November 26, 2018 and April 23, 2025.

She understands Mr. Clark's legal situation, and believes he made bad decisions while he was "running with the wrong crowd." She speaks to Mr. Clark often and is aware of some maturation shown by him over the past few years in custody. She explained that Mr. Clark is a beloved member of his immediate family, many of whom live in Colorado Springs and would provide help and support to Mr. Clark upon his release. Ms. Scott emphasized Mr. Clark's connection to his four-year old son Jusari, for whom she helps provide care on occasion. Ms. Scott is aware of Mr. Clark's legal situation and would invite him to live with her upon his release.[11]

Undersigned counsel also spoke to Lanaya Eleazer, who is Jusari's mother. She said, "Jusari talks about his dad coming home every day." Even though Jusari was just over one year old when Mr. Clark was last arrested, they have maintained a relationship through phone calls, cards, and in-person visits. While Ms. Eleazer and Mr. Clark are no longer romantically involved, she looks forward to the day he is released so he can engage and help with their son. She explained, "he was a good dad when he was out. He would buy diapers and food and was very gentle with Jusari." She said he helped pay for Jusari's needs by sharing his disability check with her.[12] She said, "we are not in a relationship but I am there for him and I care about his well-being." Having known Mr. Clark for more than six years, she is aware of many "positive changes" in Mr. Clark since he was incarcerated. She expressed support for his release, in particular so Jusari could have greater access to his father.

---

[11] This information was relayed to the probation department, which conducted a home visit with Ms. Clark and confirmed this information. (ECF Doc. 193 at 18).

[12] Mr. Clark was physically disabled during an accident wherein he was severely burned when he was about 13 years old.

Notably, Mr. Clark was raised by his grandmother Mariam Scott, who passed away unexpectedly earlier this year in a tragic car accident while Mr. Clark was imprisoned. He moved this court to attend her funeral, which request was granted in part to allow Mr. Clark to view her funeral via live feed from county jail. (ECF Doc. 154, 158). The passing of Ms. Scott was a devastating and formative point in Mr. Clark's young life, and he hopes to improve his choices in the future to better honor her impact on him.

### b. Nature and Circumstances of the Offense

The nature of the offenses is adequately summarized in the PSR. (ECF Doc. 193 at 5-9). Mr. Clark was a part of a group of men who burglarized several pharmacies in Colorado. Mr. Clark was not a leader of this group or a planner of these crimes, and was included in this operation by older relatives and friends. The group spent only minutes inside each pharmacy in the early morning hours, so there was little or no threat to employees and the public. Mr. Clark, while involved in a sophisticated operation, was not thinking clearly at the time as he was on two ankle monitors for his pending state charges when these crimes were committed. A large part of the contraband recovered in 18CR7431 (for which Mr. Clark was sentenced to the state DOC) were obtained during the Burglary offenses charged in this case.

## IV.   Conclusion

Spending the past three years in prison has humbled and chastened Mr. Clark, and he blames no one but himself for his actions. The objectives of Title 18 U.S.C. 3553(a) have been met, and a sentence of 37 months with 20 months concurrent to his state DOC sentences plus supervised release will adequately reflect the seriousness of

the offense, promote respect for the law, and provide just punishment for the offense. *See,* Title 18, U.S.C., 3553(a)(2)(i). In addition, such a sentence will adequately deter criminal conduct, and protect the public from further crimes of the defendant. *Id.* at (a)(2)(ii), (iii).

**WHEREFORE**, considering all the relevant factors enumerated by 18 U.S.C. §3553(a), Mr. Clark respectfully urges the Court to impose either a variant sentence of 17 months consecutive to his Colorado Department of Corrections (DOC) Sentences in 15CR132, 15CR2618, 18CR6823, 18CR6804, and 18CR7431, or a sentence of 37 months with 20 months concurrent to his DOC sentences.

Dated this Saturday, December 25, 2021.

                                                  Respectfully submitted,

                                                  __S/Peter Hedeen___
                                                  Peter Hedeen
                                                  2373 Central Park Blvd.
                                                  Suite 100
                                                  Denver, CO 80238
                                                  720-979-0927
                                                  303-803-1501  Fax

## CERTIFICATE OF SERVICE

I hereby certify that on Saturday, December 25, 2021, I electronically filed the foregoing with the Clerk of the Court using the court's ECF system which will send notification of such filing to all counsel of record and the following e-mail address:

Kelly Churnet
Kelly.Churnet@usdoj.gov


And, I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Mr. Brainard Clark (via US Mail)


\_\_S/Peter Hedeen\_\_\_
Peter Hedeen
2373 Central Park Blvd.
Suite 100
Denver, CO 80238
720-979-0927
303-803-1501  Fax